# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, ex rel., )
THOMAS, et. al., )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Relators/Plaintiffs, )
　　　　　　　　　　　　　　　　　　　　)
v. ) Case No. 11-2475-CM
　　　　　　　　　　　　　　　　　　　　)
BLACK & VEATCH SPECIAL PROJECTS )
CORP., )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant. )
_____)

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion to dismiss the second amended complaint (Doc. 49). For the following reasons, the court dismisses relators' express false certification claim and denies the remainder of the motion.

### I.　　FACTUAL BACKGROUND[1]

In December 2010, the United States awarded defendant a contract to provide goods and construction services for electrical facilities in and around the Kandahar Province in Afghanistan in support of the Kandahar Power Initiative ("KPI") project ("the KPI Contract"). The KPI Contract required defendant to comply with Afghan law while working in Afghanistan.

Afghan law requires foreign citizens working in Afghanistan for a foreign organization to obtain a work permit. To obtain a work permit, the foreign worker must present original study documents to the Afghan government.

---

[1] The factual background is based on the allegations in the second amended complaint. The court must assume as true all well-pleaded facts in the second amended complaint and view them in the light most favorable to relators, the nonmoving parties. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990).

Defendant experienced delays in getting visas and work permits for its employees and this delay impacted the scope, schedule, and budget of the KPI Contract. Beginning in March 2011 and continuing through June 2011, defendant created falsified study documents for seven employees to obtain Afghan work permits. This was done through defendant's Human Resource department and at the immediate direction of defendant's Human Resource Director working in Afghanistan.

Defendant created the falsified documents by altering the name that appeared on genuine study documents. As one example, on May 7, 2011, defendant created a diploma for relator Kevin Thomas. The diploma indicated that Mr. Thomas received a degree of Bachelor of Material Science and Engineering from the University of Minnesota. Mr. Thomas did not receive such a degree from the University of Minnesota. To create this diploma, defendant used a copy of a real diploma that had been awarded to another employee, relator Carolyn Thomas, obscured Ms. Thomas's name, and added Mr. Thomas's name. The Afghan government issued a work permit for Mr. Thomas and at least three other employees.

Defendant then submitted claims for payments to the United States for work performed in Afghanistan, including work performed by employees for whom defendant had created falsified study documents. For example, on June 30, 2011, defendant submitted Invoice #12 for the period May 28, 2011, to June 10, 2011, to the United States. Invoice #12 included Standard Form 1034 that contained a certification that "this voucher is correct and proper for payment." Defendant did not indicate in Invoice #12 that defendant had created falsified educational documents and submitted them to the Afghan government to obtain work permits for defendant's employees. The United States paid these invoices.

Relators filed a complaint on August 23, 2011, alleging that defendant violated the False Claims Act ("FCA"). After an investigation, the government declined to intervene. Defendant filed

the instant motion on June 4, 2013, and argues that the second amended complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

**II.     ANALYSIS**

The FCA is an antifraud statute that allows a private individual to bring a claim on behalf of the government against a party that defrauded the government. There are two types of actionable fraud claims under the FCA: factually false claims and legally false claims. *See United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1168 (10th Cir. 2010) (explaining the difference between factually false and legally false claims).

Relators assert a legally false claim—namely, that defendant falsely certified compliance with the terms of the KPI Contract in seeking payment from the government. Relators contend that the KPI Contract required compliance with foreign laws and that defendant violated Afghan law by presenting forged educational documents to obtain work permits. Relators assert this claim based on two theories: (1) express false certification and (2) implied false certification. Defendant argues that relators have failed to state a claim under either theory. Defendant also contends that relators have not alleged the underlying fraud with sufficient particularity.

To survive a Rule 12(b)(6) challenge, the second amended complaint must contain enough facts to state a claim for relief that is plausible on its face. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The court is also mindful of Rule 9(b) because relators' claims involve allegations of fraud. *Lemmon*, 614 F.3d at 1171. To plead fraud with particularity, the second amended complaint must contain "factual allegations regarding the who, what, when, where and how of the alleged claims." *Id.* at 1172.

### A. **Relators failed to state a claim based on an express-false-certification theory but stated a claim based on an implied-false-certification theory**

To state a viable claim based on an express-false-certification theory, relators must allege that defendant knowingly submitted a legally false request for payment to the government, the request contained a false statement, the false statement was material to the government's decision to pay, and the government paid the request. *Lemmon*, 614 F.3d at 1170. Defendant argues that relators failed to allege that the requests for payment contained a false statement.

The second amended complaint addresses the false-statement requirement by pointing to the invoices' certification that "this voucher is correct and proper for payment." Standard Form 1034. The second amended complaint also identifies the fiscal reports' certification that "the sum claimed under this contract is proper and due." 48 C.F.R. § 752.7003. Relators contend that these statements expressly certify compliance with the material terms of the KPI Contract. Specifically, relators argue that "due," "correct," and "proper" must have different meanings based on standard contract principles. And that a reasonable interpretation of "proper" is "compliance with other material contractual provisions."

Relators' proposed interpretation of these certifications—and particularly the word "proper"—is too broad. In context, these certifications relate to the propriety of the fiscal data and reports submitted to the government. They do not certify compliance with all material terms of the contract. The certifications identified by relators stand in contrast to the certification in *Lemmon*. In that case, the certification expressly stated that "the payments requested were only for work performed in accordance with the . . . terms and conditions of the contract." *Lemmon*, 614 F.3d at 1170–71. That certification explicitly referenced the contract and confirmed compliance with its terms and conditions. Here, there is only a vague reference to the amounts requested being "proper." This general

certification does not support an express-certification claim.[2] Accordingly, relators have not alleged a legally false claim based on an express-false-certification theory.

To state a claim based on an implied-false-certification theory, the second amended complaint needs to contain sufficient factual allegations to show that defendant "knowingly submitted legally false requests for payment to the government, that the government paid the requests and that, had the government known of the falsity, it may not have paid." *Lemmon*, 614 F.3d at 1169. Defendant challenges relators' allegations for the last requirement. Defendant argues that complying with Afghan law was not a material requirement of the KPI Contract.[3] But the materiality requirement "does not require a plaintiff to show conclusively that, were it aware of the falsity, the government would not have paid." *Lemmon*, 614 F.3d at 1170. Rather "it requires only a showing that the government may not have paid." *Id.* (emphasis in original). And the second amended complaint makes this showing.

First, the second amended complaint alleges that the government's contracting efforts in Afghanistan are "part of the United States' military and foreign policy effort in Afghanistan, including the counterinsurgency strategy in Afghanistan to create economic growth and goodwill among the people and government of Afghanistan." (Doc. 48 at 3.) Second, it alleges that the KPI Contract supports the KPI, which "is a critical component of the U.S. government's Counterinsurgency (COIN) strategy in Southern Afghanistan." (*Id.*) Third, relators allege that defendant was being paid, in part, to support the government's objectives in Afghanistan and to refrain from actions that could

---

[2] Both parties cite to *United States v. Intrados/International Management Group*, 265 F. Supp. 2d 1 (D.D.C. 2002), in support of their position because it discusses the certification in Standard Form 1034. But *Intrados* is distinguishable. In that case, the plaintiff alleged that the defendant used false direct salaries in a calculation, incorporated that false number in an invoice, and then submitted the invoice to the government for reimbursement. The false information in that case directly relates to the fiscal information underlying the report.

[3] Defendant contends that if relators' position is accepted, then any violation of Afghan law (e.g., speeding violation) might affect the United States' decision to pay. But there is a difference between a routine speeding violation and submitting forged documents to a governmental agency in order to secure official government papers.

-5-

undermine the government's counterinsurgency strategy.  (*See id.* at 4 ("Actions which could undercut Afghan goodwill were contrary to the purpose of the KPI Contract.").)  Fourth, pursuant to specific portions of the KPI Contract, defendant expressly agreed and was obligated to comply with Afghan law while working in Afghanistan.  (*Id*.)  Fifth, the second amended complaint alleges that the government "could reduce or suspend progress payments" if defendant failed to comply with any material requirements of the KPI Contract.  Based on these allegations, the second amended complaint sufficiently alleges that, had the government been aware that defendant submitted fraudulent study documents to the Afghan government to obtain work permits, it may not have paid the invoices in full.[4]

### B. Relators alleged fraud with sufficient particularity

Relators allege, on information and belief, that defendant submitted the forged educational documents to the Afghan government.  Defendant argues that this allegation does not satisfy Federal Rule of Civil Procedure 9(b).  But fraud allegations may be alleged on information and belief when the facts in questions are peculiarly within the defendant's knowledge and the complaint sets forth the factual basis for the plaintiff's belief.  *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

The second amended complaint alleges that, on information and belief, defendant submitted the forged educational documents to the Afghan government to obtain work visas and permits.  (Doc. 48 at 10). It then provides the basis for this belief: (1) the Afghan government requires original education documents as a condition to issuing work permits, (2) defendant created forged educational documents, and (3) the Afghan government issued work permits.  (*Id.* at 10–11.)  The second amended complaint explains that relators' belief is reasonable because: (1) forged study documents are not the

---

[4]  Defendant compares this case to *Lemmon*.  The court agrees that the allegations in this case are not as complete as the allegations in *Lemmon*.  But *Lemmon* did not set the baseline.  Instead, the Tenth Circuit simply determined that the plaintiff had stated a claim based on an implied-false-certification theory.  As explained above, relators included sufficient factual allegations to survive the current motion.

-6-

types of documents that would be created without a purpose, and (2) creating forged documents would address the delay issue that defendant was experiencing in securing work visas and permits. Finally, the second amended complaint alleges that details concerning the submission of these documents to the Afghan government are peculiarly within defendant's knowledge. These allegations satisfy Rule 9(b).

**IT IS THEREFORE ORDERED** that Black & Veatch Special Project Corp.'s Motion To Dismiss (Doc. 49) is granted in part. Relators' express false certification claim is dismissed. The remainder of defendant's motion is denied.

Dated this 26th day of July, 2013, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
United States District Judge