UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
ex rel. KEVIN THOMAS and
CAROLYN THOMAS,

                           Plaintiffs,

v.                                                                 Case No. 11-2475-DDC

BLACK & VEATCH SPECIAL
PROJECTS CORP.,

                           Defendant.

## **ORDER**

This is the kind of order no judge likes to write, as it highlights unfortunate conduct by otherwise respected members of the bar. At the heart of the matter are plaintiffs' first request for admissions and defendant's motion to strike them (**ECF doc. 73**). The motion was discussed at length during a pretrial conference on May 8, 2014, at which plaintiffs Kevin and Carolyn Thomas appeared through counsel, Kirk T. May and Jason M. Hans, and defendant Black & Veatch Special Projects Corp. appeared through counsel, Nathan F. Garrett and Kathleen A. Fisher. Due to the high risk of long-lasting fallout from continuing to fight over the subject issue, the undersigned U.S. Magistrate Judge, James P. O'Hara, strongly encouraged counsel to consider retreating from the untenable positions they'd staked out. Counsel declined to do so, which of course is their prerogative. So the court will proceed to resolve the dispute and let the chips fall where they may.

In December 2010, the United States awarded defendant a contract to provide goods and construction services for electrical facilities in Afghanistan in support of the Kandahar Power Initiative project ("the KPI Contract"). The KPI Contract required defendant to comply with Afghan law while working in Afghanistan. Plaintiffs, former employees of defendant, bring this action on behalf of the United States, alleging defendant violated the False Claims Act[1] by creating and submitting fraudulent credential documents to the Afghan government to obtain work permits for its employees working on the KPI Contract.

Discovery closed on March 30, 2014.[2] As required by the court's scheduling order, the parties then began drafting a proposed pretrial order in preparation for a pretrial conference and anticipated summary judgment motion practice. Defense counsel e-mailed an initial draft of the proposed pretrial order to plaintiffs' attorneys on April 23, 2014.[3] Plaintiffs did not submit their proposed revisions to defendant's draft until April 28, 2014, which was the same day the proposed order was originally due to the undersigned's chambers.[4] In their revised draft of the pretrial order, plaintiffs included proposed factual stipulations based on defendant's "admissions," which plaintiffs assert defendant made by failing to timely respond to plaintiffs' first requests for admission. Unable to resolve the issue informally, defendant filed the instant motion to strike plaintiffs' requests for admissions.

---

[1] 31 U.S.C. §§ 3729-3732.
[2] ECF doc. 58.
[3] ECF doc. 73-3.
[4] *See* ECF doc. 73-4; *see also* ECF doc. 71.

I.   **Background**

On April 5, 2013, defendant filed a motion to dismiss arguing that plaintiffs' "express certification" and "implied certification" claims under the False Claims Act were fatally defective.[5] About a week later, the court held the initial scheduling conference. The parties discussed and agreed that discovery should be staged to some extent until defendant's motion to dismiss could be decided by the then-presiding U.S. District Judge, Carlos Murguia.[6] The undersigned ordered the parties to confer and e-mail a list of the *specific* discovery to be conducted in the "near term" and, if any disagreements arose, agreed to hold a telephone status conference.[7] The parties could not agree on the scope of the "near term" discovery. Therefore, the undersigned held a telephone status conference with the parties on April 17, 2013.

Following the April 17, 2013 status conference, the undersigned issued an order instructing plaintiffs to serve "narrowly drawn interrogatories and document requests" by April 18, 2013, and ordered defendant to respond to the interrogatories by April 24, 2013.[8] Plaintiffs timely served their first set of interrogatories and requests for production on April 18, 2013.[9]

That same day, plaintiffs also served their first requests for admission. Plaintiffs included the following message with their requests: "We realize that we did not raise

---

[5] ECF docs. 24 and 25.
[6] The case recently was re-assigned to U.S. District Judge Daniel D. Crabtree. ECF doc. 75.
[7] *See* ECF doc. 29.
[8] ECF doc. 32.
[9] ECF doc. 33.

serving requests for admission with Judge O'Hara yesterday, but we think it could shorten the process …. Let me know if you have any questions or an objection to the requests for admission being treated as part of the near term discovery in accordance with Judge O'Hara's order."[10]  On April 22, 2013, defendant responded, "while we appreciate your effort to shorten the process … we do not anticipate admitting any of your proposed admissions …. Therefore, we intend to address your interrogatories and requests for production on Wednesday."[11]  The next day, plaintiffs replied, "I understand that defendant refuses to answer the requests for admission as part of the near term discovery, be it by denial or otherwise in accordance with the rule.  If that is not the case and I have misunderstood, please let me know.  Otherwise, we will raise the issue with Judge O'Hara and ask that the requests for admission be part of the near term discovery."[12] That same day, defendant responded, "Right, if you want to add admissions, you'll need to raise it with Judge O'Hara.  I don't know, for the purposes of early discovery, how that advances the exercise.  So, too, your stated reason for including them is not achieved under the current case circumstances … given that we are responding to requests related to all the identified folks."[13]

---

[10] ECF doc. 73-1 at 3.
[11] *Id.*
[12] *Id.* at 2.
[13] *Id.* at 1.

Contrary to their April 23, 2013 e-mail, plaintiffs never sought relief from the court to include requests for admission as part of the "near term" discovery.[14] Defendant timely served its responses to plaintiffs' first interrogatories and requests for production as part of the "near-term" discovery on April 24, 2013.[15]

On May 20, 2013, plaintiffs moved to amend their first amended complaint.[16] The court granted plaintiffs' motion and denied defendant's above-referenced motion to dismiss, without prejudice, as moot.[17] On June 4, 2013, defendant filed a motion to dismiss the second amended complaint.[18] In light of the foregoing, the undersigned entered a scheduling order directing the parties to confer and e-mail an updated planning report by August 9, 2013.[19]

On July 26, 2013, Judge Murguia granted in part and denied in part defendant's second motion to dismiss.[20] Because plaintiffs' implied certification claim survived, the court held a status conference and the court entered an amended scheduling order on August 16, 2013.[21] During the conference, the parties did not raise any discovery issues, and the fact-discovery deadline was set for February 10, 2014.[22] Subsequently, the parties propounded written discovery and conducted depositions. At no time during this

---

[14] Plaintiffs did not raise the issue again until they included the admissions as factual stipulations in the proposed pretrial order, i.e., more than one year after the requests for admissions were served.
[15] ECF doc. 35.
[16] ECF doc. 46.
[17] ECF doc. 47.
[18] ECF doc. 49.
[19] ECF doc. 52.
[20] ECF doc. 56.
[21] ECF doc. 58.
[22] *Id.*

discovery period did plaintiffs serve requests for admission, including the "First Request for Admission" they proposed during the "near term" discovery period. Additionally, plaintiffs never raised any issue pertaining to their "First Request for Admission" to suggest they believed defendant was required to respond to the requests.

Upon receiving plaintiffs' proposed pretrial order, defendant learned for the first time that plaintiffs contend defendant did not timely respond to the requests and thus, defendant has admitted all of the matters contained in their "First Request for Admission." In response, defendant filed the instant motion to strike.

## II. Analysis

Defendant argues it had no obligation to respond to plaintiffs' requests for admission because they were beyond the scope of permitted discovery during the "near term" discovery period and were not re-served on defendant when general discovery commenced. Defendant alleges plaintiffs' counsel's contention that defendant has admitted all factual allegations in the requests for admission is "particularly underhanded" and plaintiffs' counsel "could <u>not</u> have reasonably believed that defendant 'admitted' the facts contained in the proposed requests."[23] In support of its argument, defendant points to the following facts: (1) defendant's counsel specifically informed plaintiffs' counsel that defendant did not intend to admit any of the facts in plaintiffs' proposed requests during their e-mail exchange in April 2013;[24] and (2) defendant's

---

[23] ECF doc. 73 at 6.
[24] *See* ECF doc. 73-1.

responses to plaintiffs' first set of interrogatories were directly contrary to the purported admissions.[25]

Defendant describes plaintiffs' actions as a "last ditch procedural trap on [defendant] … *after* the conclusion of discovery".[26] Defendant asserts that this "belated attempt by [plaintiffs'] counsel to sandbag [defendant] is unbecoming of the ethical practice of law."[27] Defendant argues that plaintiffs' requests for admission "were not authorized by this Court's order limiting discovery during the pendency of the motion to dismiss, were not served on [defendant] during the opening of discovery, and [defendant] had no obligation to formally respond to [plaintiffs'] proposed requests."[28] Therefore, defendant asks the court to strike plaintiffs' proposed requests and their alleged stipulations in the proposed pretrial order.

Plaintiffs' position, elegantly simple if not hyper-technical, is that defendant has admitted all of the facts contained in their first requests for admission by failing to timely respond within the time limit imposed by Fed. R. Civ. P. 36(a)(3). Rule 36(a)(3) does provide that a matter is admitted unless a "written answer or objection" is made within thirty days after the requests are served. Because it's undisputed that defendant failed to specifically answer or object to each of plaintiffs' requests within thirty days of April 18,

---

[25] Defendant also directs the court's attention to the fact that plaintiffs were dissatisfied with defendant's interrogatory responses denying knowledge of who created the altered documents or whether the documents were submitted to the Afghan government and therefore, filed a motion to compel, which this court denied (ECF doc. 41). Significantly, the motion to compel (ECF doc. 38), which was filed on May 1, 2013, did not mention or seek relief for the unanswered requests for admission.
[26] ECF doc. 73 at 7.
[27] *Id.*
[28] *Id.*

2013, plaintiffs assert that the matters within the requests are admitted and "conclusively established."[29] In their response to defendant's motion to strike, plaintiffs argue (1) the motion is procedurally improper, in that Rule 36 contemplates a motion to withdraw admissions instead of a motion to strike the underlying discovery requests; and (2) there was never a stay of discovery and therefore plaintiffs' requests for admissions were entirely appropriate when served.

Further, plaintiffs defend their actions because "[n]othing in the Federal Rules requires a party to remind another party of its obligation to answer any discovery timely, including requests for admissions."[30] Additionally, plaintiffs assert that Rule 36(a)(3) is self-executing on a party's failure to timely respond. Therefore, plaintiffs argue that this is not a "last ditch procedural trap" but rather a consequence of defendant's "conscious, unilateral decision to not respond." Plaintiffs assert that defendant's position is inconsistent with its decision to serve discovery in June 2013—prior to the court setting deadlines for completing all discovery. Finally, plaintiffs claim to have relied on these admissions to their detriment such that they took no deposition testimony or attempted to discover any of the information contained in the requests for admission, because it was their belief that all matters within the admissions had been admitted and conclusively established by defendant's failure to timely respond. Plaintiffs emphasize the foregoing proves that they relied upon these admissions since they centered their discovery strategy

---

[29] *See* ECF doc. 74 at 1.
[30] *Id.* at 7.

around this assumption by not taking discovery on any of the issues in the requests for admission.

The court agrees with plaintiffs that, technically, a motion to withdraw admissions is what's contemplated by Rule 36 in this situation. But since the parties have briefed and argued the issues at length within the analytical framework of Rule 36, the court has no hesitancy considering the instant motion to strike as a motion to withdraw admissions.

To place things in context, it's critical to keep in mind that, at least according to the parties' proposed pretrial order, plaintiffs seek nearly $700 million in treble damages, penalties, and attorneys' fees on their implied certification claim under the False Claims Act, despite there being no claim let alone any evidence of substantive problems or shortcomings associated with defendant's work on the subject project. So this is a pretty big case by any measure. It's also critical to keep in mind that the subject discovery does not involve some trivial or even relatively minor matter. Indeed, to the contrary, plaintiffs' requests seek admissions about arguably the most important facts in this case, i.e., whether documents were altered by or at the direction of defendant, and whether those altered documents were submitted or shown by defendant, or at defendant's direction, to the Afghan government.[31]

As earlier indicated, Fed. R. Civ. P. 36 states that a matter is admitted unless within thirty days after being served the party to whom the request is directed serves a written answer or objection. Fed. R. Civ. P. 36(b) provides that a matter admitted under Rule 36 is conclusively established unless the court permits the admission to be

---

[31] *See* ECF doc. 73-2.

withdrawn or amended. Rule 36 contains a two-part test for determining whether a party may withdraw an admission. The court may permit withdrawal if: (1) withdrawal would promote presentation of the merits of the action and (2) it would not prejudice the requesting party in maintaining or defending the action on the merits.[32]

Plaintiffs essentially ignore that Rule 36(b) "'emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.'"[33] That is, "'[t]he court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than on the moving party's excuses for an erroneous admission.'"[34] The decision whether to permit withdrawal is a discretionary one.[35]

Under the first part of the Rule 36(b) test, the party moving to withdraw an admission has the burden of demonstrating that the presentation of the merits of the action will be subserved or facilitated by permitting the withdrawal.[36] The following factors may be considered by a district court as part of this inquiry: (1) whether the admission is contrary to the record in the case; (2) whether an admission is no longer true because of changed circumstances; (3) whether, through an honest error, a party has

---

[32] Fed. R. Civ. P. 36(b).
[33] *Thompson v. Harness*, No. 11-1220, 2012 WL 1893505, at *1 (D. Kan. May 23, 2012) (quoting Fed. R. Civ. P. 36 advisory committee's note).
[34] *Id.* (quoting *In re Durability Inc.*, 212 F.3d 551, 556 (10th Cir. 2000)).
[35] *Id.* (citing *Ropfogel v. United States*, 138 F.R.D. 579, 582 (D. Kan. 1991)).
[36] *Id.* at *2 (citing *Team Logistics, Inc. v. OrderPro Logistics, Inc.*, No. 04-2061, 2005 WL 1140774, at *2 (D. Kan. May 10, 2005)).

made an improvident admission; and (4) whether the effect of upholding the admission would be practically to eliminate any presentation of the merits.[37]

Requests 1 through 7 seek admissions that educational documents of defendant's employees were altered by or at the direction of defendant. Requests 8 through 14 seek admissions that said altered documents were submitted or shown by defendant, or at defendant's direction, to the Afghanistan Ministry of Labor, Social Affairs, Martyrs & Disabled. These admissions go directly to the liability aspects of this case.

The purported admissions are contrary to the record in this case. As earlier indicated, plaintiffs served interrogatories on defendant as part of its "near term" discovery. The interrogatories, in pertinent part, asked defendant to identify: (1) individuals who participated in the forgery of diplomas or have knowledge of the forged diplomas; and (2) individuals who presented the forged diplomas to the Afghanistan Ministry of Labor, Social Affairs, Martyrs & Disabled or who have knowledge of the same. Defendant timely responded that it was "unaware of any individual" that was involved in any decision to alter the documents, was involved in the alteration of such documents, or has knowledge of the alteration of the documents.[38] Defendant also responded it was unaware of any information demonstrating that the educational documents identified by plaintiffs were submitted or shown to the Afghanistan Ministry of Labor, Social Affairs, Martyrs & Disabled by defendant or at defendant's direction.[39] Defendant identified its Human Resources Manager, Jill Addessi, as the individual who

---

[37] *Ropfogel*, 138 F.R.D. at 583.
[38] ECF doc. 73-5.
[39] *Id.*

provided information to answer the interrogatories. Defendant also promised to supplement its answers as it learned of new information. These answers were repeated and confirmed by defendant in its response to plaintiffs' motion to compel filed on May 6, 2014.[40] Significantly, in addition, defendant specifically denied these same factual allegations in its answer filed on August 9, 2013.[41]

Even assuming for the sake of discussion that plaintiffs' requests for admission were authorized, and likewise assuming defendant had any obligation to respond to them within thirty days, defendant's failure to do so was an honest error. Given the state of the record when plaintiffs served their requests for admission, defendant credibly believed the requests would not be included as part of "near term" discovery *unless* the undersigned approved them as such. Because the parties were only engaging in limited discovery while a motion to dismiss was pending, it was reasonable for defendant to conclude these requests were not part of general discovery, thereby imposing the usual thirty-day time constraint to respond. Should defendant have followed up and been more diligent about its obligations to respond? Absolutely. However, defendant's error, if any, was an honest one.

Plaintiffs argue that defendant's position that the parties could not engage in general discovery is refuted by the fact that defendant served "general discovery" requests on plaintiffs on June 7, 2013.[42] This argument fails because the court had denied defendant's motion to dismiss as moot on May 20, 2013. Furthermore, as defendant

---

[40] ECF doc. 39.
[41] ECF doc. 57.
[42] *See* ECF doc. 51.

points out, the requests it served on June 7, 2013 were consistent or similar to the authorized "near term" discovery it served in April 2013, with only minor adjustments in light of plaintiffs' second amended complaint. Therefore, defendant's "error" was an honest one.

Lastly, declining to allow defendant to withdraw the admissions would effectively scuttle any presentation of the merits. In their complaint, plaintiffs allege defendants sought payment for work performed under the KPI Contract while violating the contract, specifically, by failing to comply with Afghan law. Plaintiffs allege defendant knew it was violating Afghan law by submitting forged documents or was reckless in not knowing that obtaining work permits based on forged documents violated Afghan law and the KPI Contract. As noted above, these admissions go directly to the liability of this case and the elements of plaintiffs' False Claims Act claim against defendant.

Upon consideration of the factors under the first part of the Rule 36(b) test that apply to this particular case, the court finds defendant has met its burden to show that withdrawal of the subject "admissions" would promote presentation of the merits of this action.

As earlier indicated, the second part of the Rule 36(b) test requires the party opposing withdrawal to show that it would be prejudiced by withdrawal of the admissions.[43] Mere inconvenience does not constitute prejudice.[44] The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now

---

[43] *Raiser v. Utah Cnty*, 409 F.3d 1243, 1246 (10th Cir. 2005).
[44] *Id.*

has to convince the jury of its truth; rather, the prejudice relates to the difficulty that a party might face in proving its case caused by a sudden need to obtain evidence with respect to the questions previously deemed admitted.[45]

Plaintiffs argue the admissions are an important piece of their evidence and they would be prejudiced in maintaining this action because they have not taken (or attempted to take) discovery on these issues. Even if discovery is re-opened, plaintiffs assert, "it is unclear whether Plaintiffs could even locate these individuals given the passage of time. Thus, Defendant has failed to show that Plaintiff would not be prejudiced by permitting Defendant to withdraw or amend its admissions."[46]

Plaintiffs have it backwards. The party *opposing* withdrawal must show it would be prejudiced. In this case, that is plaintiffs—not defendant.

Plaintiffs rely on a speculative assumption that locating individuals "probably hasn't gotten easier" in the last year. But as noted earlier, mere inconvenience is not enough to constitute prejudice. In any event, plaintiffs have not shown that they would be prejudiced by allowing defendant to withdraw its admissions.

So, having considered both aspects of the Rule 36(b) test, and exercising its discretion, the court concludes that defendant should be allowed to withdraw the admissions which plaintiffs claim to have secured. Indeed, this court believes the record in this case is so clear that it'd be an abuse of discretion not to grant defendant relief. For

---

[45] *Id.*
[46] ECF doc. 74 at 11.

plaintiffs to impliedly argue that a potential $700 million judgment could withstand appellate scrutiny on this record borders on the absurd.

## III. Conduct of Counsel

Even though our adversary system of justice is quite well-suited to finding the truth, effective communication between and among opposing counsel obviously is important if lawsuits are to be handled fairly and efficiently. Here, both sides are at fault to some degree. Most importantly, plaintiffs' counsel obviously should have arranged for a status conference to confirm whether the admissions could be included as part of "near term" discovery or if the parties could engage in "general discovery" instead of assuming the latter was true.

Given the relevant Rule 36 analysis, the court finds it unnecessary to agree or disagree with defense counsel's highly charged accusations about plaintiffs' counsel engaging in conduct that was "underhanded" and "unbecoming of the ethical practice of law." With the benefit of hindsight, it's at least clear that defense counsel was too casual in its dealings with plaintiffs' counsel and the subject requests for admission. Defense counsel in this case presumably will now be always on their guard when dealing with these particular plaintiffs' lawyers in regard to the myriad discovery and trial-related issues that must be managed between now and the end of the litigation. And the court would not be surprised if other lawyers will now be much more wary of these plaintiffs' lawyers. None of this probably is a good development for the Kansas City-area bar, which this court believes has a well-deserved reputation as highly skilled yet among the most collegial in the United States.

From the court's vantage point, plaintiffs' counsel should have contacted the court about the status of the requests for admission *before* centering plaintiffs' entire discovery strategy around an *obvious* procedural oversight. Ultimately it makes no difference whether plaintiffs' counsel intended to set a procedural trap, or whether a trap was inadvertently created due to a simple failure of communication. Presentation of the merits is what matters. The question of whether documents were forged and submitted to the Afghan government by or at the direction of defendant goes to the very core of this supposedly $700 million case. It would make no sense to make "admissions" binding when clearly they were a result of a miscommunication among counsel. It certainly would not promote the presentation of this case on the merits.

It would be equally irrational to allow defendant to withdraw its admissions, yet deny plaintiffs the opportunity to conduct additional discovery on the issues they assumed were admitted. Defense counsel's opposition to the re-opening of discovery is wholly unpersuasive and lacking in any sense of proportionality or practicality.

Overall, the most charitable thing the court can say about the positions taken by *both* defense counsel and plaintiffs' counsel is that they are wholly unpersuasive.

In consideration of the foregoing,

IT IS HEREBY ORDERED**:**

1. Defendant's motion (**ECF doc. 73**) is granted in part and denied in part. To the extent defendant seeks to strike plaintiffs' request for admissions, the motion is denied. But defendant's request for permission to withdraw the purported admissions is granted. By this order, defendant is deemed to have withdrawn its admissions to

plaintiffs' first requests for admission. Defendant shall serve responses to plaintiffs' requests for admission by **May 27, 2014**.

2. Discovery is hereby re-opened to a limited extent. Plaintiff may take discovery, in any form, but only on the issues framed in its first requests for admission.

3. The parties' attorneys shall meet in person, confer in good faith, and then submit a proposed schedule for discovery by **June 6, 2014**. This schedule shall address not only a new discovery cutoff, but also suggest dates for submitting a revised proposed pretrial order, and a deadline for filing motions for summary judgment.

4. The existing June 2, 2014 dispositive motion deadline and January 5, 2015 trial setting are hereby vacated. The trial date will be rescheduled after input from counsel.

Dated May 20, 2014, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge
